**V.L. RENDINA, INC., Appellant**

v.

**The CITY OF HARRISBURG, Harrisburg School District.**

Commonwealth Court of Pennsylvania.

Argued Sept. 9, 2004.

Decided Oct. 7, 2004.

Thomas J. Weber, Harrisburg, for appellant.

Steven R. Dade, Harrisburg, for appellee.

BEFORE: PELLEGRINI, Judge, and SIMPSON, Judge, and KELLEY, Senior Judge.

OPINION BY Judge PELLEGRINI.

V.L. Rendina, Inc. (the Company) appeals an order of the Court of Common Pleas of Dauphin County (trial court) affirming the decision of the City of Harrisburg Tax & License Appeal Board (Board) denying the Company's request for a refund of certain business privilege taxes paid under protest during 1999, 2000 and 2001.

The Company is a Pennsylvania Corporation with Lancaster County as its principal place of business. It served as the general contractor in the construction of the Keystone Office Building in the City of Harrisburg (the Project) during the years of 1999, 2000 and 2001. During those years, the Company maintained a job trailer to use as an office at the construction site in Harrisburg. The trailer was equipped with a telephone line used by the superintendent of the Project, but all general management, accounting, estimating, and other administrative functions were conducted at the Lancaster County office, nearly 38 miles from the construction site. In addition, the Company received all mail at the Lancaster County Office and held all meetings at that location. When the Company applied for a Business Privilege and Mercantile License (the License) to commence the Project, it listed its business address as "Third & North Streets, Harrisburg" and its mailing address as "P.O. Box 4644, Lancaster, PA."

The City of Harrisburg and the Harrisburg School District (collectively, "City") had a Business Privilege and Mercantile Tax (hereinafter, "Ordinance 31") enacted pursuant to the Pennsylvania Local Tax Enabling Act (Act).[1] Ordinance 31 defines "business" as follows:

---

1. *See generally* Act of December 31, 1965, P.L. 1257, *as amended,* 53 P.S. 6902.

(a) BUSINESS: Any activity carried on or exercised for gain or profit in the City of Harrisburg, including but not limited to, the sale of merchandise or other tangible personalty or the performance of services. As to those taxpayers having their principal place of business within the City of Harrisburg, business shall include all activities carried on within the City of Harrisburg.

As to those taxpayers having a place of business other than their principal one within the City of Harrisburg, business shall include all activities carried on within the City and those carried on outside the City attributable to the place of business within the City.

Ordinance 21, § 355.03. Pursuant to these provisions, the City levied its business privilege tax on the Company in the amount of $27,346.88. The taxes were calculated exclusively on the Company's services in reference to the Project completed in Harrisburg. No tax was imposed on the Company's other services rendered outside the City.

The Company paid the taxes under protest and later filed a claim for a refund under the Local Tax Collection Law [2] and Section 8431 of the Local Taxpayers' Bill of Rights, 53 Pa.C.S. § 8431 (Taxpayer Bill of Rights). The Board denied the claim, reasoning that the Company maintained a job trailer in Harrisburg and was not taxed in the locality of its principal place of business. The trial court affirmed on similar reasoning. The Company now appeals from the trial court's determination.[3]

The Company contends that it does not have a "place of business" in Harrisburg so as to bring it within the ambit of the Harrisburg business privilege tax. Other than the construction trailer that is used in conjunction with the Project, the Company argues that it has no general office in Harrisburg, does not conduct business in Harrisburg, and does not solicit work through its presence in Harrisburg. Even though the Project lasted three years, the Company argues that does not mean that it has a "place of business" in Harrisburg because, if that were so, the definition of privilege would be extended to include a "length of time" component and would result in transforming a privilege tax into a transaction tax.

The City responds that the Company maintained a field office in Harrisburg which provided the Company with a base of operations from which to manage, direct, and control its business activities necessary to complete the Project. The City also argues that the Company paid no business privilege tax to another jurisdiction for the work performed on the Pro-

---

**2.** Act of May 21, 1943, P.L. 349, *as amended,* 72 P.S. § 5566b. That section provides:

(a) Whenever any person or corporation of this Commonwealth has paid or caused to be paid, or hereafter pays or causes to be paid, into the treasury of any political subdivision, directly or indirectly, voluntarily or under protest, any taxes of any sort, license fees, penalties, fines or any other moneys to which the political subdivision is not legally entitled; then, in such cases, the proper authorities of the political subdivision, upon the filing with them of a written and verified claim for the refund of the payment, are hereby directed to make, out of budget appropriations of public funds, refund of such taxes, license fees, penalties, fines or other moneys to which the political subdivision is not legally entitled. Refunds of said moneys shall not be made, unless a written claim therefore is filed, with the political subdivision involved, within three years of payment thereof.

72 P.S. § 5566b(a).

**3.** Our review is limited to determining whether there is an abuse of discretion, a lack of supporting evidence, or a clear error of law. *Sabarese v. Tax Claim Bureau of Monroe County,* 69 Pa.Cmwlth. 442, 451 A.2d 793 (1982).

ject. Because it had those contacts and had no other place of business subject to the tax, the City argues that the Company's request for a refund should be denied.

In *Gilberti v. City of Pittsburgh*, 511 Pa. 100, 511 A.2d 1321 (1986), our Supreme Court considered the extent of a municipality's taxing power under Section 6902 of the Local Tax Enabling Act. In that case, a Pittsburgh company was taxed pursuant to a local business privilege tax based on the gross receipts it received from business conducted both inside and outside the city's limits. Finding that the tax was a tax upon the privilege of doing business in the city and not a transaction tax, the Supreme Court held that the privilege tax was valid and validly imposed upon the company based on the gross receipts from business conducted within and without the city's limits. The Court explained that the "tax remains one that is levied only upon a privilege exercised within the City, to wit maintenance of a business office, and the fact that the amount of tax is dependent upon the taxpayer's gross receipts, including receipts from services performed outside the City, does not undermine the legitimacy of the tax." *Id.* at 109, 511 A.2d at 1326. The Court continued:

> In enacting such a provision, the legislature surely recognized that the exercise by a taxpayer of the privilege of doing business within a taxing jurisdiction constitutes far more than the sum of individual transactions and activities which are consummated or performed within

the territorial limits of the taxing entity. Indeed, having a *place of business* within the City enables the taxpayer to have a *base of operations* from which to *manage, direct, and control business activities occurring both inside and outside the City limits*. Further, the in-City office provides a place from which to *solicit business, accept communications, conduct meetings, store supplies, and perform office work*. All of these activities are, in the usual course, necessary to any *business operation*. This is so irrespective of whether the business performs services at job sites outside of the City.

*Id.* at 109, 511 A.2d at 1326 (emphasis added).[4]

In *Township of Lower Merion v. QED, Inc.*, 738 A.2d 1066 (Pa.Cmwlth.1999), we held that contractor's individual transactions within the township were outside scope of a tax on the "privilege" of doing business in that township because the contractor was not engaged in having a "place of business," but was merely doing the work in that township. We stated that a business privilege tax is only properly applied to the *privilege* of having a base of operations in the taxing jurisdiction, not the privilege of performing the underlying transactions within the taxing jurisdiction. In the present case, the City does not dispute that if the Company did not maintain the job trailer at the job site, it would not be subject to the privilege tax.

---

4. Our Supreme Court recently revisited and upheld *Gilberti* in *Northwood Construction Company v. Township of Upper Moreland,* —— Pa. ——, 856 A.2d 789 (2004). In that case, the Supreme Court upheld a business privilege tax imposed on the gross receipts generated from a contractor's in-township and out-of-township business where the contractor's principal place of business was within the township. The Court reasoned, as it did in *Gilberti*, that although the privilege tax effec-

tively taxed out-of-township activities,' it was nonetheless valid because the contractor had its principal place of business in the township, and the tax was upon the *privilege* of maintaining a principal place of business in the township, which could be used to solicit business, conduct meetings, accept communications, store supplies, perform office work, manage, direct, and control business activities occurring both inside and outside the township's limits.

Applying those principles to the unique facts of this case, it is clear that job site trailer was not a "place of business," i.e., a base of operations from which the Company could manage, direct, and control business activities occurring both inside and outside city limits within the meaning of *Gilberti.* The City stipulated that the trailer was not used to solicit business, conduct meetings, to store supplies, or to perform office work, other than communications limited to performance on the Project. The City stipulated that the Company's principal place of business (Lancaster) is where all general management, accounting, estimating, and other administrative functions were completed. The City stipulated that the Company's superintendent on the Project did not receive mail at the trailer or use the trailer for Project-related meetings. Although the trailer was located near the Harrisburg job site, it was only used to supervise that particular job, and no one contends that the job site trailer was a base of operations of the Company from which it desired to or did conduct any other business. Moreover, the Company was merely doing work within the City, and the Project was an isolated transaction within Harrisburg city limits,[5] albeit a rather long-term transaction, and the Company did not routinely do business in Harrisburg.

Because the job site trailer in this case was not a base of operations from which the Company could conduct all of its business, the Company should not have been subject to the City's business privilege tax. Accordingly, the order of the trial court is reversed.[6]

### ORDER

AND NOW, this *7th* day of *October,* 2004, the order of the trial court in the above-captioned matter is reversed.

DISSENTING OPINION BY Senior Judge KELLEY.

I respectfully dissent.

In this case, the Company and the City entered into the following relevant stipulations of fact: (1) the Company's principal place of business was formerly located in

---

5. A business privilege tax and a transaction tax are not at all similar. The "privilege" of doing business within a locality implies that a potential taxpayer has hung its shingle and portrayed itself in the community as an entity conducting business within the taxing locality on a regular, permanent basis. By contrast, a "transaction" implies an isolated incident. As further explained in *Gilberti,* the subject of taxation is different; the privilege tax is assessed upon the privilege of doing business within the borders of the taxing body, provided there is a base of operations upon which the taxing body has the authority to levy the tax. The transaction tax, contrastingly, focuses on the specific transaction within the borders of the taxing body. Apart from those distinctions, the manner by which the tax is levied is different; privilege taxes are levied based on the gross receipts from *all* business conducted within and without the taxing municipality, provided there is a base of operations within the limits of the taxing locality, whereas transaction taxes are levied based on gross receipts derived from the isolated transaction within the limits of the taxing locality. Thus, we cannot characterize a tax as a privilege tax where the crux of the tax is upon an isolated, underlying transaction, even though the taxing body has called it a privilege tax.

6. The City places a great deal of emphasis on the fact that the Company did not pay a business privilege tax in Lancaster County where its principal place of business is located. This is wholly irrelevant because the Local Tax Enabling Act does not *require* any locality to enact taxes at all. Simply because the Company's principal place of business does not have a privilege tax, and the Company did not pay such a tax in its home county, does not compel the conclusion that this particular company *must* pay such a tax somewhere.

East Hempfield Township, Lancaster County, and it is presently located in West Hempfield Township, Lancaster County; (2) the Company performed construction work as a general contractor in the City from 1999 to 2001, constructing the Keystone Office Building located at Forster and 6th Streets; (3) during the three-year Keystone Office Building construction project, the Company maintained a leased trailer for use as a field office for that project; (4) the field office contained a telephone which was used by the field superintendent for this project; (5) the superintendent did not allow the use of the trailer by subcontractors, and all meetings with subcontractors were held at locations at or near the project; (6) mail for the superintendent was delivered to the Company's office in Lancaster County, and all of the general management, accounting estimating and other administrative functions were conducted at the office in Lancaster County; and (7) on the Company's application for a Business and Mercantile License that was filed with the City [1], the Company listed its business address as "Third & North Streets, Harrisburg, PA 17101", and its mailing address as "P.O. Box 4644, Lancaster, PA 17604".

As noted by the Majority, the City's Ordinance 31 defines taxable "business"

activities in the City, in pertinent part, as follows:

(a) BUSINESS: Any business activity carried on or exercised for gain or profit in the City of Harrisburg, including but not limited to, the sale of merchandise or other tangible personalty or the performance of services.... *As to those taxpayers having a place of business other than their principal one within the City of Harrisburg, business shall include all activities carried on within the City and those carried on outside the City attributable to the place of business within the City.*

Ordinance 31, § 355.03(a) (emphasis added).[2]

Based on the foregoing stipulations of fact, to my mind, it is clear that the Company maintained a "base of operations" within the City which was subject to its business privilege tax. As noted by the trial court:

[W]e found that the [Company] in this case did, in fact, maintain a base of operations within the [City] for the three years in question and therefore was not entitled to a tax refund for those years. We found that the job trailer was a bona fide field office that was used to oversee and control the day-to-day operations at

---

1. Section 5–715.8 of the City's Codified Ordinances provides, in pertinent part:

(a) Any person desiring to conduct, or to continue to conduct, any business within the City shall file with the Business Administrator or designee an application for a Business Privilege and Mercantile License.... The license issued shall be conspicuously posted in the place of business for which the license is issued. In cases where more than one place of business is conducted, a separate license shall be issued for each place of business....

\* \* \*

(c) Regardless of whether or not a license is procured, the tax required to be paid pursu-

ant to this chapter is due if a person operates a business within the City.

2. As noted by the Majority, Ordinance 31 was enacted by the City pursuant to the provisions of the Local Tax Enabling Act (LTEA), Act of December 31, 1965, *as amended*, 53 P.S. §§ 6901—6924.

the Keystone Office Building construction project. The job trailer conferred upon the [Company] the ability to contact and to be contacted at the site, the benefit of direct oversight of the project, and the goodwill and exposure gained by virtue of doing business within the Harrisburg community.

Trial Court Opinion at 6.

Thus, the fact that the Company maintained a principal place of business outside the City, in Lancaster County, in no way alters the conclusion that the Company maintained a "base of operations" within the City subject to the tax for the gross receipts attributable to this "base of operations". The imposition of this tax is proper even if the "base of operations" in the

City was not used for, or did not relate to, any other Company projects that were completed outside of the City.[3] As a result, based on the provisions of Ordinance 31, I believe that the City properly levied its business privilege tax on the Company totaling $27,346.88 for the Company's business activities that were attributable to its "base of operations" within the City for the years 1999, 2000 and 2001.

Accordingly, I would affirm the trial court's order in this case.

---

3. *See, e.g., Philadelphia Eagles Football Club, Inc. v. City of Philadelphia*, 573 Pa. 189, 231 n. 43, 823 A.2d 108, 134 n. 43 (2003) ("[T]he City also asserts that *Gilberti v. City of Pittsburgh*, 511 Pa. 100, 511 A.2d 1321 (1986), supports the imposition of the [business privilege tax] on 100% of the gross receipts of the Football Club, regardless of where the receipts were earned. However, *Gilberti* did not, as the City suggests, enact a per se rule allowing a city to tax 100% of the gross receipts of *any* business domiciled within its jurisdiction. Rather, in *Gilberti*, this Court concluded that a taxing jurisdiction is not required to *ignore* the contribution provided by a business maintaining a base of operations within the taxing jurisdiction. . . .") (emphasis in original); *Gilberti*, 511 Pa. 100, 108–109, 511 A.2d 1321, 1326 (1986) ("[M]aintaining a business office in the City is an exercise of a privilege 'within the limits' of the taxing district, and, thus, a tax can thereupon be levied. In the present case, the City's Tax, labeled a tax on the 'privilege' of doing business in the City, operates in such a manner as to, in effect, tax revenues from certain transactions that occur wholly outside the City. This is so because the amount of the Tax is determined by the assessment of a millage rate against the gross receipts of the business, and such receipts include income derived from services performed at locations outside the City limits. Nevertheless, the tax remains one that is levied only upon a privi-

lege exercised within the City, to wit maintenance of a business office, and the fact that the amount of tax is dependent upon the taxpayer's gross receipts, including receipts from services performed outside the City, does not undermine the legitimacy of the tax. . . . Indeed, having a place of business within the City enables the taxpayer to have a base of operations from which to manage, direct, and control business activities occurring both inside and outside the City limits. Further, the in-City office provides a place from which to solicit business, accept communications, conduct meetings, store supplies, and perform office work. All of these activities are, in the usual course, necessary to any business operation. *This is so irrespective of whether the business performs services at job sites outside of the City.*") (emphasis added); *Township of Lower Merion v. QED, Inc.*, 738 A.2d 1066, 1071 n. 6 (Pa.Cmwlth. 1999) ("[W]here a company has more than one base of operations, however, Section 8 of the LTEA, 53 P.S. § 6908, has been interpreted by the courts to provide that the taxpayer must receive credit for gross receipts taxes paid to another municipality where the base of operations exists and from the receipts generated by that office. *See Gilberti*, [*Township of Lower Merion v. Qed, Inc.*, 738 A.2d 1066 (Pa.Cmwlth.1999), *petition for allowance of appeal denied*, 565 Pa. 680, 775 A.2d 811 (2001)].").