938 A.2d 988

**V.L. RENDINA, INC., Appellee**

v.

**The CITY OF HARRISBURG and the Harrisburg School District, Appellants.**

Supreme Court of Pennsylvania.

Argued May 8, 2006.

Decided Dec. 27, 2007.

408

David Paul Andrews, for Altoona School Dist., amicus curiae.

Nathan Harlan Waters, Jr., for Harrisburg School Dist., appellant.

Steven Richard Dade, Harrisburg, for City of Harrisburg, appellant.

Thomas J. Weber, Arnold Bruce Kogan, Harrisburg, for V.L. Rendina, Inc., appellee.

BEFORE: CAPPY, C.J., CASTILLE, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## OPINION

Justice SAYLOR.[1]

The issues in this case center on whether a municipality may apply its business privilege tax relative to gross receipts from construction work performed within its borders.

Appellee V.L. Rendina, Inc. ("Rendina") is a Pennsylvania corporation with its principal place of business located in

1. This case was reassigned to this author.

Lancaster County. During the years 1999 through 2001, Rendina served as general contractor for the construction of the Keystone Office Building located at the corner of Forster and Sixth Streets in Harrisburg. During the construction project, Rendina leased and maintained a job trailer at Third and North Streets for use in connection with the project. The trailer contained a telephone line which was used by the field superintendent; however, the superintendent did not allow subcontractors to use the trailer, and all meetings with subcontractors were held at locations at or near the project. Mail for the superintendent was delivered to the company's Lancaster County office, where all general management, accounting, estimating, and other administrative functions were conducted. Consistent with the above, on its application for a Business and Mercantile License,[2] Rendina listed its business address as Third & North Streets in Harrisburg, and provided a mailing address in the city of Lancaster.

During the relevant time period, the City of Harrisburg and the Harrisburg School District (collectively, the "City"), appellants herein, imposed a Business Privilege and Mercantile Tax on entities conducting business in Harrisburg. This tax was levied under the City's Ordinance 31, enacted pursuant to the Local Tax Enabling Act (the "LTEA").[3] *See generally* 53 P.S. § 6902 (permitting political subdivisions to impose taxes on, *inter alia,* "persons, transactions, occupations, [and] privileges" within their limits). Ordinance 31 contains the following definition relevant to this appeal:

**2.** As stipulated by the parties, Section 5–715.8 of the City of Harrisburg's Codified Ordinances provides:

(a) Any person desiring to conduct, or to continue to conduct, any business within the City shall file with the Business Administrator or designee an application for a Business Privilege and Mercantile License.... The license issued shall be conspicuously posted in the place of business for which the license is issued .... (c) Regardless of whether or not a license is procured, the tax required to be paid pursuant to this chapter is due if a person operates a business within the city.

*See* Stipulation of Facts, Exh. 3.

**3.** Act of December 31, 1965, P.L. 1257 (as amended, 53 P.S. §§ 6901–6924).

BUSINESS: Any activity carried on or exercised for gain or profit in the City of Harrisburg, including but not limited to ... the performance of services. As to those taxpayers having their principal place of business within the City of Harrisburg, business shall include all activities carried on within the City of Harrisburg.

As to those taxpayers having a place of business other than their principal one within the City of Harrisburg, business shall include all activities carried on within the City and those carried on outside the City attributable to the place of business within the City.

Harrisburg Ordinance No. 31, § 355.03(a) (Nov. 9, 1982).[4]

The City also promulgated regulations effective January 1, 1999, which reflect an administrative interpretation of the tax ordinance's provisions. These regulations define business as "the carrying on or exercising of any trade, profession, or other commercial activity," City of Harrisburg, Business Privilege and Mercantile Tax Regulations, Art. II, § 201, and additionally provide:

The Business Privilege and Mercantile Tax is a tax on the privilege of doing business in the City of Harrisburg. A person exercises the privilege of doing business by engaging in any activity within the limits of the City to promote the sale of goods or services. It is not necessary to be a resident of the City, or to have an office or place of business within the City, to be doing business in the City.

*Id.*, § 203.[5]

In accordance with Ordinance 31 and the associated regulations, the City assessed a business privilege tax against Rendi-

---

4. The ordinance also provides for due apportionment relative to services that are taxed by more than one municipality. *See* City of Harrisburg Codified Ordinances § 5-715.3(f).

5. The regulations clarify that "[a]ll receipts from services performed within the limits of the City of Harrisburg are attributable to the City," and provide the following illustration: "Taxpayer, a plumbing and heating contractor whose sole office is in Altoona, sends a technician to Harrisburg to repair a furnace. The receipts earned by the technician's services performed within Harrisburg are attributable to Harrisburg." *Id.*, § 205(B)(1).

na for tax years 1999–2001 in the total amount of approximately $27,000, which was calculated exclusively on the company's services in connection with the construction of the Keystone Office Building. No tax was imposed on any other services rendered by Rendina, including any business conducted outside the City of Harrisburg. The company paid the taxes under protest and filed a timely refund claim under the Local Tax Collection Law and Section 8431 of the Local Taxpayers' Bill of Rights.[6]

In June 2003, the Harrisburg Tax & License Appeal Board denied the claim, reasoning that Rendina maintained a "field office" in Harrisburg and that the company was not taxed in the locality of its principal place of business in Lancaster County, thus eliminating any entitlement Rendina might otherwise have to an exemption. The Court of Common Pleas of Dauphin County affirmed the board's decision based on similar reasoning.[7]

A divided panel of the Commonwealth Court reversed. *See V.L. Rendina, Inc. v. City of Harrisburg*, 859 A.2d 888 (Pa.Cmwlth.2004). The majority held that Rendina's job site trailer was not a "base of operations" as delineated by this Court in *Gilberti v. City of Pittsburgh*, 511 Pa. 100, 511 A.2d 1321 (1986). The majority noted that *Gilberti* had explained that Pittsburgh's business privilege tax was properly construed as being levied on the privilege of maintaining a business office within the city, and that, accordingly, commercial activities occurring outside of Pittsburgh's city limits could be taxed by Pittsburgh so long as all such activities were directed and controlled from the taxpayer's Pittsburgh office. By way of contrast, the Commonwealth Court majority referenced *Township of Lower Merion v. QED, Inc.*, 738 A.2d 1066 (Pa.Cmwlth.1999), in which the taxpayer did not maintain any office in the taxing municipality, and its business contacts with the township were merely transactional in nature. The *QED*

---

**6.** Act of May 21, 1943, P.L. 349 (as amended, 72 P.S. § 5566b), and 53 Pa.C.S. § 8431, respectively.

**7.** The common pleas court reached its decision on the basis of stipulated facts and the parties' briefs, but did not take additional evidence.

court found that the tax was not properly imposed because the company in that matter had not availed itself of the "privilege of having a base of operations in the taxing jurisdiction." *V.L. Rendina*, 859 A.2d at 891 (emphasis removed). Applying these principles to the present dispute, the Commonwealth Court majority found that Rendina's job site trailer in Harrisburg was not a "base of operations," and hence, was not a "place of business" from which Rendina was able to manage business activities occurring both within and outside of the city limits of Harrisburg, as was the case in *Gilberti*. Indeed, the City had stipulated that the trailer was not used to solicit new business, to store supplies, or to perform office work, other than communications regarding work on the Keystone Building construction project; nor was it a location where meetings took place or where the field superintendent received mail. Therefore, the majority determined that Rendina "was merely doing work within the city, and the [construction] project was an isolated transaction within Harrisburg city limits, albeit a rather long-term transaction, and [Rendina] did not routinely do business in Harrisburg." *Id.* at 892. Accordingly, the court held that Rendina's refund claim should have been granted.

Senior Judge Kelley dissented, relying on the common pleas court's express finding that Rendina "did, in fact, maintain a base of operations within the [City] for the three years in question and therefore was not entitled to a tax refund for those years." *Id.* at 893–94 (Kelley, S.J., dissenting) (quoting *V.L. Rendina, Inc. v. City of Harrisburg, et al.*, No. 2003 CV 3148 MP (CCP Dauphin, Feb. 17, 2004), *slip op.* at 6) (alteration in original). The dissent continued by further quoting the trial court as follows:

> We found that the job trailer was a bona fide field office that was used to oversee and control the day-to-day operations at the Keystone Office Building construction project. The job trailer conferred upon the [Company] the ability to contact and to be contacted at the site, the benefit of direct oversight of the project, and the goodwill and exposure

gained by virtue of doing business within the Harrisburg community.

*Id.* (alteration in original). Thus, the fact that Rendina's principal place of business was in Lancaster County did not, in Judge Kelley's view, alter the conclusion that it also maintained a base of operations in Harrisburg, thereby properly subjecting gross receipts attributable to the Harrisburg work to the City's business privilege tax. *See id.* at 894.

On appeal by allowance to this Court, *see V.L. Rendina, Inc. v. City of Harrisburg*, 585 Pa. 693, 887 A.2d 1243 (2005) (*per curiam*), the City generally advances the analysis of the Board, the common pleas court, and the Commonwealth Court dissent, to the effect that the job site trailer was not merely "an aluminum box on a job site," Brief for Appellant at 13, but rather, was a field office within the meaning of the City's tax regulations, and/or a "base of operations" for purposes of the analysis reflected in *Gilberti.* The City argues that this interpretation is supported by Rendina's application for a Business and Mercantile License on which it listed the site of the trailer as its business address. Additionally, the City maintains that the facts of *QED* are distinguishable from those of the present case because, in that matter, the taxpayer did not maintain a presence in the taxing municipality; rather, it merely made an initial visit to the job site to determine the work to be completed and sign a contract with the property owner, and thereafter subcontracted all of the building work to various subcontractors, one of which acted as a liaison between QED and the other subcontractors.

Rendina, on the other hand, asserts that the Commonwealth Court majority correctly determined that its job trailer did not constitute a "base of operations," but was, instead, merely a "spot for Appellee's superintendent to escape from the elements." Brief for Appellee at 7. Rendina additionally avers that it did not derive from the City of Harrisburg any benefit normally associated with having a place of business within a municipality so as to justify the City's imposition of the business privilege tax at issue; rather, Rendina urges, it simply performed an isolated transaction and was paid accord-

ingly. In Rendina's view, this implicates the difference between a transaction tax and a business privilege tax, with the latter inapplicable to the activities in which Rendina engaged during the construction project, particularly as the trailer was not for "general" business usage. *Id.* at 10. In support of this distinction, Rendina quotes a portion of the Commonwealth Court's *QED* decision in which that court interpreted *Gilberti* to require an "actual, physical, *permanent* place of business" in the taxing municipality as a prerequisite to the imposition of any business privilege tax. *See id.* at 7 (quoting *QED,* 738 A.2d at 1069) (emphasis added by Appellee).

 Our standard of review in a tax appeal where, as here, the trial court did not take additional evidence is limited to determining whether constitutional rights were violated, an error of law was committed, or the Board's findings of fact were unsupported by substantial evidence. 2 Pa.C.S. § 754(b). Here, an error of law is asserted and, as with all such questions, this Court's scope of review is plenary. *See Philadelphia Eagles Football Club v. City of Phila.,* 573 Pa. 189, 205 n. 11, 823 A.2d 108, 118 n. 11 (2003).

Initially, we note that, although both parties place significant importance on the question of whether the job site trailer, in some sense, constituted a "base of operations" for the construction project, this terminology does not derive from any legislative restriction contained in the LTEA. Rather, the construct was used in *Gilberti v. City of Pittsburgh,* 511 Pa. 100, 511 A.2d 1321 (Pa.1986), to resolve a legal issue concerning the extra-territorial reach of a city's business privilege tax. In that case, an architectural firm had its principal place of business in the City of Pittsburgh, but also maintained on-site supervision of activities occurring outside the city. The firm challenged Pittsburgh's levy of a business privilege and mercantile tax on its extra-jurisdictional activities. Upholding the levy, this Court explained that it was a tax on the "privilege" of doing business in Pittsburgh and, because it was assessed on the receipts of the business, it included receipts from transactions consummated outside the city's jurisdiction but attributable to the company's base of

operations in Pittsburgh.[8] In such circumstances, the focus on maintaining a "base of operations" within the taxing jurisdiction obviously assumes substantial relevance. *Accord Northwood Constr. Co. v. Township of Upper Moreland,* 579 Pa. 463, 476–78, 856 A.2d 789, 797–98 (2004).

■ *Gilberti,* however, should not be read as establishing a broader judicial rule that is not supported by the plain language of the LTEA and derivative ordinances and regulations. Indeed, there is nothing in the LTEA that requires municipalities to condition business privilege tax liability upon the presence in the taxing municipality of a base of operations for extra-territorial, or even intra-territorial, business activities. Here, moreover, in contrast to *Gilberti,* the City is not taxing Rendina on activities occurring outside of its jurisdiction; rather, it is taxing activities occurring wholly inside its boundaries. Thus, the factors in *Gilberti* pertaining to the relation of a company's base of operations to its entire business enterprise are not necessary to establish Rendina's nexus to activities occurring in Harrisburg. The nexus for taxing those activities is established by Rendina's presence in the City— specifically, the Keystone Building job site—and in this respect, it does not depend on the presence of a base of operations to which other commercial activities may be attributed. Put differently, although *Gilberti* found that the taxpayer's maintenance of an in-city base of operations from which it directed extra-territorial activities was a *sufficient* condition to permit taxation of such activities (so long as they were attributable to the operational base), it does not follow that the existence of such an office is a *necessary* condition for the

8. In this respect, the *Gilberti* court explained that

having a place of business within the City enables the taxpayer to have a base of operations from which to manage, direct, and control business activities occurring both inside and outside the City limits. Further, the in-City office provides a place from which to solicit business, accept communications, conduct meetings, store supplies, and perform office work. All of these activities are, in the usual course, necessary to any business operation. This is so irrespective of whether the business performs services at job sites outside the city.

*Gilberti,* 511 Pa. at 109, 511 A.2d at 1326.

taxation of business activities that occur wholly inside of the taxing municipality's boundaries.

What *is* necessary is that the business activities sought to be taxed are of the type authorized by the LTEA and the local business privilege tax. There is no present disagreement that the LTEA permits local taxation of gross receipts from a long-term construction project taking place inside the jurisdictional limits of the taxing municipality. Thus, the question distills to whether the building project falls within the definition of "Business" contained in the City's business privilege tax. That issue must be resolved based upon the text of the local implementing scheme—Ordinance 31 together with its associated regulations—independent of the prior judicial use of abstract nomenclature in situations not implicated by this case.

Here, the City exercised its prerogative under the LTEA by imposing a tax on "the privilege of doing business as [defined by the ordinance] in the City of Harrisburg." City of Harrisburg, Ordinance No. 31, Section 355.04 (Nov. 9, 1982). The ordinance broadly defines the term "business" to encompass "[a]ny activity carried on or exercised for gain or profit in the City of Harrisburg, including but not limited to, ... the performance of services," *id.,* Section 355.03(a), and "services" are further defined by City regulations to include "any activity ... done for the benefit of another ... including ... building, engineering, planning, designing [and] installation...." City of Harrisburg, Business Privilege and Mercantile Tax Regulations, Art. II, § 201. Further, these same regulations reaffirm that the tax at issue is intended to reach the "carrying on or exercising of any trade, profession, or other commercial activity," and that "[i]t is not necessary to be a resident of the City, or to have an office or place of business within the City, to be doing business in the City." *Id.,* §§ 201, 203. These broad definitional terms plainly subsume such a commercial endeavor as the construction of an office building inside the city.

Nevertheless, the Commonwealth Court considered the construction project to comprise one long transaction rather than an exercise of the privilege of doing business in Harrisburg, and ultimately held that the project was therefore out of reach of the City's business privilege tax. In this regard, the court drew a distinction between a transaction, which it construed to be an "isolated incident," and the carrying on of a business, which it deemed to reflect an ongoing, regular course of activities. *See Rendina*, 859 A.2d at 892 n. 5 ("The 'privilege' of doing business within a locality implies that a potential taxpayer has hung its shingle and portrayed itself in the community as an entity conducting business within the taxing locality on a regular, permanent basis."). In drawing this distinction, the Commonwealth Court relied on language from *Gilberti* that distinguished between transaction taxes and business privilege taxes. Specifically, *Gilberti* determined that any LTEA-based transaction tax levied by Pittsburgh as to commercial transactions occurring wholly outside of Pittsburgh would be *ultra vires*, as the act only enabled Pittsburgh "to tax transactions 'within the limits' of the City." *Gilberti*, 511 Pa. at 105, 511 A.2d at 1324 (quoting 53 P.S. § 6902). The reach of the city's business privilege tax was not similarly restricted, for the reasons delineated above. *See supra* note 8.

Again, however, it does not follow that gross receipts stemming from transactions occurring *within* a city cannot be subject to tax liability pursuant to the city's business privilege tax, simply because they are transactions. The holding of *Gilberti* was that extra-territorial transactions could be taxed as a business privilege provided there was a sufficient nexus with an intra-city base of operations, not that they could never be taxed as a business privilege in the municipality in which they occurred unless a similar base of operations existed there. In this respect, we note that, in authorizing local taxes on such things as "transactions," "privileges," and "occupations," the General Assembly used terms that are broad, overlapping, and imprecise, and thus, its intention appears to have been to permit local governments to capture a broad

range of commercial activity. *See generally Gilberti*, 511 Pa. at 104 n. 1, 511 A.2d at 1323 n. 1 (recognizing that the LTEA represents a "substantial reenactment of the so-called 'Tax Anything Act'" of 1947) (citing *F.J. Busse Co. v. City of Pittsburgh*, 443 Pa. 349, 353, 279 A.2d 14, 16 (1971)).

We also observe that allowing localities some leeway in terms of the rubric under which they tax business activities occurring within their borders is consistent with the reality that virtually all businesses engage in transactions of some sort, and hence, laying a tax against the gross receipts attributable to the privilege of doing business inevitably entails taxing the gross receipts generated by some set of transactions. It additionally serves to advance the enactment's underlying policy of allowing for taxation as a *quid pro quo* for businesses advantaging themselves of local governmental benefits, including the availability of police, fire, and other services. Presently, in this respect, it is evident that Rendina benefited from the availability of such services during the years it maintained a presence in Harrisburg. *Cf. Amerada Hess Corp. v. Director, Div. of Taxation, N.J. Dep't of Treasury*, 490 U.S. 66, 79, 109 S.Ct. 1617, 1625, 104 L.Ed.2d 58 (1989) ("There is also no doubt that New Jersey's Corporation Business Tax is fairly related to the benefits that New Jersey provides appellants, which include police and fire protection ... and the advantages of a civilized society." (internal quotation marks omitted)).[9]

9. In this light, the Commonwealth Court's distinction between taxing transactions and taxing the "privilege" of conducting business appears to depend for its coherence on its understanding that a company only exercises the privilege of doing business in a particular locale if it has a base of operations there. In this regard, it is possible that the Commonwealth Court was misled by *Gilberti's* statement that "the legislature has provided for [Pittsburgh] to collect a tax upon the privilege of having a place of business in the City." *Gilberti*, 511 Pa. at 109, 511 A.2d at 1326. This pronouncement, however, should not be broadly interpreted as stating that the LTEA only authorizes business privilege taxes relative to "places of business" in the base-of-operations sense. The reason is that the problem addressed in *Gilberti* was limited to the issue of extraterritorial reach, and nothing in that decision precludes taxing transactions that occur within a city under the rubric of a business privilege tax. *See generally Pennsylvanians Against Gambling Expansion Fund v. Commonwealth*, 583 Pa. 275, 301, 877 A.2d 383, 398

As a final matter, we recognize that this appeal has been framed around the issue of whether the job site trailer constituted a sufficient business presence to qualify as a "base of operations" for *Gilberti* purposes. To the extent we would be constrained by the parties' arguments in this regard, we find Senior Judge Kelley's dissent from the majority holding of the Commonwealth Court persuasive. *See V.L. Rendina,* 859 at 892 (Kelley, S.J., dissenting). In particular, we do not believe that the holdings of *Gilberti* or *Northwood* should be read to foreclose the straightforward recognition that the maintenance in a taxing jurisdiction of a job-site trailer for a major, long-term construction project represents commercial activity relying on the privilege to do business afforded by the municipality. We do note, however, that the issue of the sufficiency of the job site trailer cannot be resolved as such without inevitably begging the preliminary question of whether any base of operations was required for Rendina's activities to come within the City's business privilege tax in the first instance. As clarified above, we do not construe the LTEA or Ordinance 31 to impose such a requirement, and we are reluctant to fashion a rule of law in the present matter—which would bind other Pennsylvania municipalities having similarly-worded tax ordinances—premised upon the existence of such a requirement merely because the City has not advocated the position that no intra-jurisdictional base of operations is necessary.

Accordingly, we conclude that Rendina's work in Harrisburg in connection with the construction of the Keystone Office Building was subject to taxation under the City's business privilege tax, and that this is true regardless of whether the job site trailer was used as a "base of operations" as that term was utilized in *Gilberti* and its progeny, or whether the three-year construction project can, in some sense, be viewed as constituting a single, lengthy "transaction." We therefore reverse the judgment of the Commonwealth Court and reinstate order of the Court of Common Pleas of Dauphin County,

(2005) (observing that in all judicial decisions the holding must be read against the underlying facts of the case).

which affirmed the order of the Harrisburg Tax & License Appeal Board denying Rendina's refund claim.

Justice BALDWIN did not participate in the consideration or decision of this case.

Former Justice NEWMAN did not participate in the decision of this case.

Justices CASTILLE and EAKIN join the opinion.

Justice BAER files a concurring opinion.

Chief Justice CAPPY files a dissenting opinion.

Justice BAER concurring.

Although I agree with the Majority that Harrisburg's imposition of its Business Privilege and Mercantile tax in this case was proper under the Local Tax Enabling Act (LTEA), Act of Dec. 31, 1965, Pub. L. 1257, § 2, *as amended,* 53 P.S. §§ 6901, *et seq.,* and therefore should be sustained, I disagree with the Majority's characterization of the tax in question. I cannot join the Majority's identification of the Harrisburg tax, as applied to Appellee V.L. Rendina, Inc., as a "business privilege tax" levied on the privilege of doing business in the City of Harrisburg rather than a "transaction tax" calculated based upon a transaction conducted in the taxing jurisdiction—in this case, the construction of the Keystone Office Building. Maj. Op. at 418, 938 A.2d at 995 ("[I]t does not follow that gross receipts stemming from transactions occurring *within* a city cannot be subject to tax liability pursuant to *the city's business privilege tax,* simply because they are transactions." (emphasis added)). Nor do I think it prudent to so identify the tax when it unnecessarily casts doubt on our prior decisions, which is precisely the effect of the Majority Opinion.

Notwithstanding the parties' and the lower courts' efforts to analyze this case based upon our opinion in *Gilberti v. City of Pittsburgh,* 511 Pa. 100, 511 A.2d 1321 (1986), the Majority approaches abrogating an important aspect of that decision, and in that regard I differ with the Majority Opinion. The Majority is certainly correct that the question in *Gilberti*

concerned a taxing jurisdiction's authority to assess taxes on extra-jurisdictional business activity, where it was attributable to a "base of operations" located within the jurisdiction. The Majority is too hasty, however, to cast aside aspects of that ruling with broader implications, especially given that we lack the customary adversarial briefing for and against such a decision.[1] In particular, this Court in *Gilberti* spoke of and acted upon the need to distinguish the different forms of taxation authorized by the LTEA.[2] Focusing on the operation of the tax, rather than how the taxing jurisdiction styled it, the Court found the levy in question unsustainable as a transaction tax but deemed it a permissible exercise of the authority bestowed by the LTEA to tax receipts attributable to an exercise of the privilege of maintaining a "base of operations" within the taxing jurisdiction.

In support of this analysis, and as a necessary aspect of the holding that should bind this Court under the principle of *stare decisis*, we emphasized that *"[t]he privilege of engaging in business within the City, which the [LTEA] establishes as a subject that may be taxed, must be regarded as being separate and apart from 'transactions' within the City that may be taxed."* *Gilberti*, 511 A.2d at 1324 (emphasis added).[3] Linking a taxing jurisdiction's authority to levy a business privilege tax to the maintenance of a "base of operations"

1. Notably, neither the parties nor the courts below have ever analyzed this case as other than a *Gilberti* case with the sole relevant legal question pertaining to whether a job site trailer set up only to support construction activities amounts to a "base of operations" pursuant to that case.

2. The LTEA authorized jurisdictions such as Harrisburg to, "in their discretion, by ordinance or resolution, for general revenue purposes, levy, assess and collect or provide for the levying, assessment and collection of such taxes as they shall determine *on persons, transactions, occupations, privileges, subjects and personal property within the limits of such political subdivisions* ...." 53 P.S. § 6902 (emphasis added).

3. Despite the Majority's effort to characterize its treatment of *Gilberti* as distinguishing, rather than abrogating that case, the Majority's rejection of this distinction as so much "judicial use of abstract nomenclature," Maj. Op. at 994, casts the validity of *Gilberti's* preservation of the distinction between the various taxes permitted by the LTEA into serious doubt without so much as a whisper from any party suggesting that such is necessary or advisable.

within the jurisdiction, this Court deemed the privilege of doing business in a jurisdiction to require more than merely selling a good or service in that jurisdiction. Indeed, were that all the privilege required, a business privilege tax would be indistinguishable from a transaction tax. To so conflate the two, the Court concluded, would be unsound in light of the General Assembly's choice of language in enabling local jurisdictions to assess distinct categories of taxation.[4] In so doing, the Court emphasized the LTEA's language restricting the imposition of any of the enumerated taxes to activity occurring "within the limits of such political subdivisions." *Id.* at 1323 (quoting 53 P.S. § 6902). As a corollary to this restriction, which the Court properly construed strictly in favor of the putative taxpayer, *see Fischer v. Pittsburgh*, 383 Pa. 138, 118 A.2d 157, 158–59 (1955), it held that the imposition of a business privilege tax, as such, necessarily requires the maintenance of a "base of operations" within the jurisdiction. *Id.*

4. It is no response to this point to cite this Court's characterization of the LTEA as largely mimicking its predecessor Sterling Act's reputation as the "Tax Anything Act" of 1947. Maj. Op. at 419, 938 A.2d at 995 (citing *Gilberti*, 511 A.2d at 1323 n. 1), and to do so, itself, privileges this Court's "abstractions" over the statute's plain language. I do not dispute that the legislature's intent was to provide very broad taxing authority to local jurisdictions, nor do I question Harrisburg's authority under the LTEA to enact a transaction or business privilege tax. The danger lies not in overtaxation itself, but rather in so muddying the waters that a locality can recharacterize its scheme of taxation at will to generate more revenue, in violation of the fair expectations of parties doing business in that jurisdiction. Were Harrisburg to set up a tax plainly framed on the business privilege as bindingly characterized in our caselaw, *see Gilberti, supra,* it would be inequitable to permit it, based on the LTEA alone, to modify the character of its tax in practice to capture receipts not fairly identifiable as arising from the privilege of doing business in the jurisdiction.

 This cautionary note is especially important in light of the General Assembly's post-*Gilberti* enactment of the Local Tax Reform Act of Dec. 13, 1988, Pub. L. 1121, No. 145, § 101, *as amended,* 72 P.S. 4750.101, *et seq.,* which purported to bar local taxing jurisdictions from imposing business privilege taxation schemes not already extant as of that act's effective date. *See* 72 P.S. § 4750.533. If we are unwilling to recognize a meaningful analytic boundary between transaction, business privilege, and other taxes authorized by the LTEA, then we leave municipalities free to recharacterize their tax ordinances at will to avoid any legislative prohibition on new taxes, a result inconsistent with legislative intent.

at 1324–26. This analysis seems to me consistent with the language of the LTEA. *See* 1 Pa.C.S. § 1921 (requiring us, where possible, to construe statutes to give effect to all of their provisions, and denying us the prerogative to disregard the letter of the law in pursuit of its spirit).

Thus, to the extent Harrisburg's tax operates as a business privilege tax, regardless of the nomenclature its ordinance employs, its authority to assess that tax depends on a taxpayer's meaningful business presence within the taxing jurisdiction, one that exceeds that necessary to support the imposition of local taxes on mere transactions occurring within the jurisdiction. The Majority disagrees, and in so doing undermines material aspects of the *Gilberti* analysis. *See* Maj. Op. at 414–15, 938 A.2d at 993 (rejecting the "base of operations" terminology as a "construct" not rooted in the LTEA), 10 (calling for this Court to disregard its prior "use of abstract nomenclature" in favor of Harrisburg's interpretation of its own taxing ordinance). For all the reasons enumerated by the Commonwealth Court, *see V.L. Rendina, Inc., v. City of Harrisburg,* 859 A.2d 888, 892 (Pa.Cmwlth.2004), I simply cannot agree that the maintenance of a job site trailer, which the parties have stipulated served no greater business purpose than supporting the construction project in question, is tantamount to maintaining a "base of operations" in Harrisburg sufficient to support the imposition of a tax on the privilege of doing business in that jurisdiction. Accordingly, were Harrisburg's tax strictly structured as a tax upon the privilege of doing business in that jurisdiction, as understood in *Gilberti,* I would agree with the Commonwealth Court and with Appellee that the levy before us could not be sustained.

This analysis, however, does not end the inquiry. As in *Gilberti,* I believe that we must also consider whether the tax in question, by whatever name, is sustainable as a duly enacted instance of one of the other forms of taxation authorized by the LTEA. The LTEA, of course, did not restrict Harrisburg to imposing any one form of taxation at a time, or preclude it from creating a hybrid tax designed to reach multiple forms of business activity. Although the Harrisburg ordinance uses the words "business privilege" it does so as

part of a compound title identifying the tax provision in question as a "Business Privilege and Mercantile Tax." *See* THE AMERICAN HERITAGE COLLEGE DICTIONARY 868 (4th ed.) (defining "mercantile" as "[o]f or relating to merchants or trade"). In so entitling its taxing provision, and in light of the local tax provisions highlighted by the Majority, I find it clear that Harrisburg intended to create a tax that established simultaneous but distinct levies on both the privilege of doing business in its jurisdiction as well as on any transactions completed within the jurisdiction, without regard to where the parties to those transactions conduct business generally or are "based." This intent is manifest not only in the title of the tax, but also in the taxing ordinance's broad definition of "business," and its provision of examples that embody aspects of both business privilege and transaction taxation. *See* Maj. Op. at 410–11 & n. 5, 938 A.2d at 990–91 & n. 5. Nothing in the LTEA restricted Harrisburg from so fashioning its local tax, and I find nothing problematic with concluding that it did so and deeming it proper.

In summary, to characterize the tax in question, as does the Majority, as a "business privilege tax," Maj. Op. at 418–19, 938 A.2d at 995 strikes me as neither reflective of the tax's operation nor respectful of our decision in *Gilberti* and that case's progeny. *See, e.g., Northwood Constr. Co. v. Township of Upper Moreland,* 579 Pa. 463, 856 A.2d 789 (2004); *Township of Lower Merion v. QED, Inc.,* 738 A.2d 1066 (Pa. Cmwlth.1999); *Airpark Int'l v. Interboro Sch. Dist.,* 677 A.2d 388 (Pa.Cmwlth.1996); *G.A. & F.C. Wagman, Inc., v. Manchester Township,* 112 Pa.Cmwlth. 357, 535 A.2d 702 (1988). Instead, I would identify this tax as one that embodies aspects of both business privilege taxation and transaction taxation, one that has been clearly so structured since its enactment, and one that operates, and properly, as a transaction tax with regard to Appellee under the circumstances of this case. In so ruling, I would avoid the temptation to cast into doubt the validity of our decision in *Gilberti,* which I believe properly swept more broadly in addressing the nature of business privilege taxation than the Majority credits, and should be preserved as a viable analytic tool in assessing the validity of

other business privilege tax provisions that come before the courts in the future. Accordingly, I concur in the result, but respectfully decline to join the Majority's analysis.

Chief Justice CAPPY dissenting.

I respectfully dissent. Under Ordinance 31, Appellants levied a business privilege tax. The propriety of Appellants' business privilege tax is measured under the Local Tax Enabling Act, 53 P.S. § 6901 *et seq.* In this regard, this Court's decision in *Gilberti v. City of Pittsburgh*, 511 Pa. 100, 511 A.2d 1321 (1986) is controlling. I agree with the Commonwealth Court, that application of *Gilberti* to the stipulated facts leads to the conclusion that Appellee's job trailer was not a base of operations within the taxing jurisdiction. *See id.* at 1326. Therefore, I would hold that Appellee was not subject to Appellants' business privilege tax, and would affirm the Commonwealth Court.