GILES & RANSOME, INC., Appellant

v.

WHITEHALL TOWNSHIP.

Commonwealth Court of Pennsylvania.

Argued Dec. 10, 2012.
Decided Feb. 11, 2013.

Randy L. Varner, Harrisburg, for appellant.

Lawrence B. Fox and Daniel A. Prestosh, Allentown, for appellee.

BEFORE: PELLEGRINI, President Judge, and LEADBETTER, Judge (P.), and BROBSON, Judge.

OPINION BY Judge BROBSON.

Appellant Giles & Ransome, Inc. (Taxpayer)[1] appeals from an order of the Court of Common Pleas of Lehigh County (trial court). The trial court affirmed an order and adjudication of the Tax Appeal Board of Whitehall Township (Board). The Board's adjudication determined that Taxpayer had underpaid its business privilege taxes for the calendar years 2002 through 2006, and the Board assessed an amount due of $337,979.24, plus interest and penalties. (Conclusion of Law no. 3.)[2]

## PROCEDURAL HISTORY

By letter dated December 20, 2007, the Audit Department of Whitehall Township (Township) sent a notice of assessment to Taxpayer which reflected the results of an audit relating to Taxpayer's business privilege tax, and indicated that Taxpayer "did not include retail sales made by the salesman located at that location in their gross receipts on their business privilege tax return. They also excluded service sales outside of Whitehall Township." (R.R. at 6a.) The letter advised Taxpayer to pay the amount of $337,979.24 within thirty days of the notice.[3] (Id.) On March 12, 2008, Taxpayer filed an appeal from the notice, challenging the auditor's conclusions based primarily upon the contention that the Township's business privilege tax ordinance, Ordinance No. 1638 (Ordinance) (R.R. at 40a), imposes taxes only upon sales made or services performed within the Township's territorial limits. (Taxpayer's Rider to the Appeal, R.R. at 30a.) Taxpayer contended that the Ordinance did not apply to the sales or activities identified in the audit. (Id.)

Beginning on June 22, 2010, the Board conducted four hearings on Taxpayer's appeal.[4] Taxpayer and the Township also submitted stipulations of fact. (R.R. 314a–23a.) On or about February 1, 2011, the Board concluded that "[t]he business activities of the three salesmen assigned to the Whitehall Township facility justify the imposition of business privilege taxes on the gross receipts from their sales, including

---

1. Taxpayer is the only authorized Caterpillar dealership serving customers in Eastern Pennsylvania, New Jersey, and Delaware. (Stipulation of Fact (S.F.) no. 7; Reproduced Record (R.R.) at 315a.) Caterpillar franchises are authorized to sell its "heavy duty equipment" to third-party purchasers. Franchises may rent heavy duty equipment, maintain the heavy duty equipment, and provide service and parts for the heavy duty equipment. (S.F. no. 4; R.R. at 314a–15a.)

2. The Board determined that Taxpayer owed $230,596.11 in underpaid taxes, $74,838.42 in penalties, and $32,544.71 in interest as of the date of the audit performed by the Township's auditor. (Finding of Fact (F.F.) no. 13;

see also the "Procedural History" section of the Board's decision.) Thus, the Board assessed the total figure up through that date, plus interest and penalties accruing after the date of the audit.

3. The letter included attachments reflecting the alleged underpaid amounts for each year from 2002 through 2006. (R.R. at 7a–11a.)

4. Taxpayer and the Township pursued an agreement to resolve the dispute before the Board held its hearings. The attempts at resolving their differences were successful in some respects, but the two parties continued to disagree regarding the core issue in this case.

sales outside the 18052 zip code."[5] (Board Dec. at 3, Conclusion of Law no. 1 (footnote omitted).) Thus, the Board denied Taxpayer's appeal. Taxpayer appealed the Board's decision to the trial court, which affirmed the Board's decision.

■ Taxpayer now appeals the trial court's decision,[6] raising the following issues: (1) whether the Board erred as a matter of law or abused its discretion by concluding that the Township's business privilege tax ordinance applies to sales transactions of the three salespersons who have desks at Taxpayer's place of business in the Township, where the actual sales of heavy duty equipment took place outside the territorial limits of the Township; (2) whether equitable principles warrant the striking of the penalties included in the assessment; and (3) if the imposition of penalties is appropriate, whether the penalties should accrue only up until March 28, 2008, the date upon which the Township and Taxpayer entered a stipulation excusing the Board from the statutory duty to issue a decision on the merits within sixty days of the date Taxpayer filed its appeal with the Board. (R.R. at 39a.)

## APPLICABLE STATUTORY AND ORDINANCE PROVISIONS

Section 301.1 of the Local Tax Enabling Act, Act of December 31, 1965, P.L. 1257, *as amended*, 53 P.S. § 6924.301.1 (LTEA), provides the authority for governing bodies to adopt a business privilege tax, such as the Township's.[7] Section 301.1 specifically authorizes certain municipalities to:

> levy, assess and collect or provide for the levying, assessment and collections of such taxes *as they shall determine on persons, transactions, occupations, privileges*, subjects and personal property *within the limits of such political subdivisions.*

The Ordinance includes the following relevant provisions:

> *§ 103. Levy of Tax.* There is hereby reimposed for each tax year a tax for general revenue purposes *on the privilege of doing business*, as herein defined, in the Township, as follows:
>
> (a) *Rate of Tax.* Except in the case of wholesale dealers, each taxpayer shall pay to the Township for each tax year an amount equal to one-tenth of one percent (0.1%) (or one mill per dollar) of the taxpayer's estimated *gross volume of*

5. The record includes some discussion among the parties regarding the use of a zip code rather than the boundaries of the Township for the purpose of assessment. Neither party has made an issue of this aspect of the case, but we note that zip code areas are delineations created by the United States Postal Service which do not necessarily, and in most cases do not, correspond to the geographical boundaries of a political subdivision. In other words, although the particular zip code for Whitehall Township may encompass the entirety of the Township, it might also include a part of another municipality.

6. This Court's standard of review of a trial court's decision addressing a taxpayer's appeal is limited to considering whether any party's constitutional rights were violated, whether any necessary factual findings are supported by substantial evidence, and whether an error of law was committed. *V.L. Rendina, Inc. v. City of Harrisburg*, 595 Pa. 407, 415, 938 A.2d 988, 993 (2007).

7. The parties direct the Court to former Section 2 of the Local Tax Enabling Act, Act of December 31, 1965, P.L. 1257, *as amended*, 53 P.S. § 6902, which was in effect during the relevant time period. The General Assembly, however, renumbered and amended the former Section 2 as Section 301.1 of the LTEA, 53 P.S. § 6924.301.1, by the Act of July 2, 2008, P.L. 197. The portions of former Section 2 that are pertinent to the matter now before the Court were not amended. For the sake of convenience, we will refer to the renumbered sections in our opinion.

*business* for such tax year. Each wholesale dealer shall pay to the Township for each tax year an amount equal to seventy-five-thousands of one percent (0.075%) (or three-quarters (3/4) of a mill per dollar) of such wholesale dealer's estimated gross volume of business for such tax year.

(b) *Estimated Gross Volume of Business.*

(1) The estimated gross volume of business for a given tax year of a taxpayer who commenced his business prior to the beginning of the Preceding Year shall be the actual whole or gross volume of business transacted by such taxpayer within the territorial limits of the Township during the Preceding Year.

. . . .

(c) *Whole or Gross Volume of Business.* Whole or gross volume of business upon which the business privilege tax imposed by this Part is computed *shall include the gross consideration credited or received for or on account of sales made, services performed, rentals of property, and/or other business transactions, within the territorial limits of the Township,* subject only to the following allowable deductions and exemptions:

. . . .

(5) Taxes collected as agent for the United States of America, the Commonwealth of Pennsylvania, or the Township.

(6) The dollar volume of all business transactions excluded from the Business Privilege Tax under section 108 of this Part. Where whole or gross volume of

business activity in its entirety cannot be subjected to the tax imposed by this Part by reason of the provisions of the Constitution of the United States, or by any other provisions of law, the Executive shall establish rules and regulations and methods of allocation and evaluation so that only that part of the whole or gross volume of business which is properly *attributable and allowable to doing business in the Township shall be taxed hereunder.*

(R.R. at 42a–45a (emphasis added).) [8]

## STIPULATIONS OF FACT AND THE BOARD'S FACTUAL FINDINGS

During the tax period in question, Taxpayer maintained up to seven (7) business locations within its franchise territory, one of which is located in the Township. (S.F. nos. 8, 9; R.R. at 315a.) With regard to the manner by which sales are made and/or memorialized by a salesperson, the Township and Taxpayer agreed to the following stipulations:

18. Incoming sales inquiries are not formally logged by the answering secretary [at the Township location], nor are such inquiries memorialized in a chronological written record. After a salesperson receives an inquiry from a potential purchaser or renter, the salesperson sometimes maintains contact with such third parties by utilization of the salesperson's personal cell phone.

19. When a piece of heavy duty equipment is sold, transferred or rented, ultimately a written "equipment purchase order" is drafted by the salesperson, which order is not necessarily drafted at the [Township] location, since the sales-

---

8. Section 108 of the Ordinance identifies exemptions from the Ordinance, including instances where the Constitution or "any other applicable law" prohibits the assessment or collection of the business privilege tax. None of the deductions or exemptions contained in subsection (c) of Section 108 of the Ordinance specifically refers to the exemption or exclusion of business privilege taxes that a taxpayer may have paid to other municipalities.

person may be "on the road" or meeting with a client at a location other than at the [Township] location.

20. The pre-printed "equipment purchase order" only reflects the address of [Taxpayer's] franchise office located [in] ... Bensalem, Pennsylvania ... and its Bensalem telephone number....

21. All purchase orders and related credit applications are approved or rejected at [Taxpayer]'s corporate headquarters in the Bensalem office, regardless if the equipment purchased or rented exists at the [Township] location, and even though the original incoming telephone or other inquiry was received at the [Township] location.

(S.F. nos. 18–21; R.R. at 316a–17a.)

With regard to the specific salespersons and their pertinent activities, the Board rendered the following factual findings:

5. During the [pertinent] tax years, [Taxpayer] employed three (3) sales persons who maintained offices, including desks, telephones, computers and a mailing address at the ... [Township] location.

6. The three (3) sales persons utilized [Taxpayer's Township] location to actively pursue the sale of heavy duty equipment, conduct business meetings, and to maintain and store sales forms, equipment, brochures, and files. The salesmen had access to a secretary while working at their stations. Sometimes the sales persons used the landline at [the Township location] to conduct business.

7. There were "For Sale" signs on pieces of equipment at the [Township] facility with multiple telephone numbers which included the telephone number of the [Township] facility. It was possible for a potential customer to walk around the [Township] facility and look at different equipment that was parked or stored there and which was for sale. There was heavy duty equipment for sale during the tax years in question at the [Township] facility.

8. The three salesmen specifically were responsible for customers in Northampton County, Lehigh County and Berks County. These sales persons *at times* initiate purchase orders from the [Township] facility for heavy duty equipment which was housed or stored at the [Township] facility.

9. The three salesmen assigned to Lehigh, Northampton and Berks Counties spend most of their time at the [Township] location as compared to other locations of [Taxpayer].

(Board Dec. at 1–2, F.F. nos. 5–9 (emphasis added).)

## DISCUSSION

Taxpayer first contends that the Ordinance authorizes the imposition of such a tax only for sales made or services performed, *i.e.*, relevant sales or transactions, within the Township's territorial limits. Taxpayer points to the language quoted above, requiring taxpayers to pay taxes based upon "the actual whole or gross volume of business *transacted* by such taxpayer *within* the territorial limits of the Township." Section 103(b) of the Ordinance (emphasis added). Also, as indicated in Section 103(c) of the Ordinance, the computation of gross volume of business is determined by reference to "sales made" and "other business transactions ... within the territorial limits of the Township." Taxpayer contends that the mere location of one of its offices that is sometimes used by its salesmen is not the defining factor under the Ordinance for the purpose of assessing taxes and that the tax does not apply to sales made or services performed outside the Township's territorial limits.

Both Taxpayer and the Township rely upon (in differing respects) our Supreme Court's decision in *Gilberti v. City of Pittsburgh,* 511 Pa. 100, 511 A.2d 1321 (1986). In *Gilberti,* the Supreme Court considered whether the City of Pittsburgh (City) could lawfully collect taxes on the gross receipts derived from extra-territorial activities of an architectural firm located in the City. In particular, the City sought to assess its tax upon income derived from on-site supervision of a construction project located outside the City's territorial limits. The Supreme Court recognized that the LTEA authorizes municipalities to adopt taxing ordinances that impose taxes on transactions or the privilege of doing business in a municipality. In this light the Supreme Court considered whether the City's attempt to apply the ordinance to income derived from activities *occurring* outside the City could be maintained as either an exercise of the power to tax transactions or the power to tax the privilege of doing business in the City.

The Supreme Court concluded that the application of the ordinance to income derived from extra-territorial activities could not be sustained as a transaction tax. While recognizing that extra-territorial transactions "frequently have a substantial relationship to transactions occurring within the City," *Gilberti,* 511 Pa. at 104, 511 A.2d at 1324, the Supreme Court held that, under a transaction-based tax scheme, the locus of a transaction and a nexus to the taxing authority was an essential consideration because Section 2 (now Section 3.1) of the LTEA designated as taxable events only transactions "within the limits of such political subdivision."

Although the Supreme Court concluded that it could not uphold the tax as an assessment on extra-territorial *transactions,* the Supreme Court ultimately upheld the reach of the ordinance to revenues derived from extra-territorial activities as a valid business privilege tax. The Supreme Court considered whether the extra-territorial revenues were taxable under the business privilege tax as a consequence of the taxpayer's exercise of the *privilege* of doing business in the City. To resolve this particular question, the Supreme Court reflected upon the location where the privilege is exercised, and, citing earlier precedent, opined that when a taxing authority "imposes a tax upon a privilege, the tax cannot be levied directly upon exercises of the privilege that occur outside of the taxing district." *Id.* at 108, 511 A.2d at 1325. "The privilege of doing business in the [taxing municipality] like the privilege of owning and transferring property ... can be taxed only to the extent that the exercise of the privilege occurs within the [taxing municipality]." *Id.* In concluding that the City could tax extra-territorial revenues, the Supreme Court opined:

> In enacting [the LTEA], the legislature surely recognized that the exercise by the taxpayer of the privilege of doing business within a taxing jurisdiction constitutes far more than the sum of individual transactions and activities which are consummated or performed within the territorial limits of the taxing entity. Indeed, having a place of business with the City enables the taxpayer to have a base of operations from which to manage, direct, and control business activities occurring both inside and outside the City limits. Further, the in-City office provides a place from which to solicit business, accept communications, conduct meetings, store supplies, and perform office work. All of these activities are, in the usual course, necessary to any business operation. This is so irrespective of whether the business per-

forms services at job sites outside of the City.

*Id.* at 109, 511 A.2d at 1326. Thereafter, the courts generally approached challenges to business privilege tax ordinances by reference to the "base-of-operations" analysis employed by the Supreme Court in *Gilberti*.

The factor that the Board and trial court overlooked in applying a pure base-of-operation analysis to this matter, however, is the distinct language of the Ordinance. Unlike the ordinance at issue in *Gilberti*, which was silent regarding both the nature of the business activities and locations of the activities generating revenue, the Ordinance here delineates the business activities that are subject to the business privilege tax and confines the revenue subject to the tax to those activities ("sales made" and "business transactions") that occur within the Township. Thus, even if Taxpayer's Township branch office is considered a "base of operations," the Ordinance here does not reach to extra-territorial sales and transactions as did the ordinance at issue in *Gilberti*.

Instead, this case is more similar to this Court's decision in *J & K Trash Removal, Inc. v. City of Chester*, 842 A.2d 983 (Pa. Cmwlth.2004), *appeal denied*, 581 Pa. 708, 867 A.2d 524 (2005), which arose under a business privilege tax ordinance that contained language similar to the Township's Ordinance. The ordinance at issue in *J & K Trash Removal* provided as follows:

> There is hereby levied for the tax year and annually thereafter a tax for the general revenue purposes on the privilege of doing business as herein defined in the City of Chester as follows:
>
> . . . .
>
> (a) Rate and Basis of Tax. The rate of the tax on each and every dollar of the whole or gross volume of business transacted within the territorial limits of the

City [of Chester] shall be 4.19 mills (.00419).

*Id.* at 984 n. 2. Thus, the business privilege tax ordinance in that case similarly described the type of activity subject to the tax as transactional in nature and confined the transactional activities subject to the tax as those occurring within the territorial limits of the municipality. The Court in *J & K Trash Removal* concluded that the ordinance in that case was a tax on gross receipts derived from intra-territorial business activities. *Id.* at 988–89. In evaluating the ordinance, we first observed that the language of the ordinance was distinct from the ordinance at issue in *Gilberti*, and ultimately concluded that the taxpayer was not liable for business privilege taxes on gross receipts earned outside the territorial limits of the taxing municipality. We reasoned that there was no authorization in the ordinance for the collection of taxes on transactional activities that occurred outside the municipality. *Id.* For the same textual reasons, we conclude that the Ordinance here does not reach to sales made or business transactions that occurred outside the Township.

We find further support for this result in our Supreme Court's recent decision in *V.L. Rendina, Inc. v. City of Harrisburg*, 595 Pa. 407, 415, 938 A.2d 988, 993 (2007) (*Rendina*). In *Rendina*, the Supreme Court addressed a challenge to the assessment of a business privilege tax by the City of Harrisburg (hereafter, Harrisburg). Rendina was a construction company with a principal place of business in Lancaster. Rendina obtained a business privilege license in Harrisburg, authorizing it to perform work on a building construction project in Harrisburg. Rendina leased a trailer for the use of its construction-site supervisor, the primary purpose of which was to supply the project supervisor with a place to retreat. The trailer

was not used for meetings, general communication, or for conducting business.

The parties and this Court's decision in *Rendina* focused on the "base-of-operation" analysis that the Supreme Court created in *Gilberti* and which was followed by *Gilberti's* progeny. The Supreme Court, however, rejected the notion that the "base-of-operation" construct always applies when evaluating the meaning and efficacy of a municipality's business privilege tax. Rather, the Supreme Court indicated that the analysis in *Gilberti* was simply the means to "resolve a legal issue concerning the *extra-territorial* reach of a city's business privilege tax." *Rendina*, 595 Pa. at 415, 938 A.2d at 993 (emphasis added). In contrast to the facts and ordinance at issue in *Gilberti*, the Supreme Court in *Rendina* observed that "[Harrisburg] is not taxing Rendina on activities occurring *outside* its jurisdiction; rather it is taxing activities occurring wholly inside its boundaries. Thus, the factors in *Gilberti* pertaining to the relation of a company's base of operations to its entire business enterprise are not necessary to establish Rendina's nexus to activities occurring in Harrisburg." *Id.* at 415–16, 938 A.2d at 993–94 (emphasis added). Thus, the two distinct analyses are responses to two distinct situations.

■ When the language of a business privilege tax ordinance attempts to reach income that a taxpayer generates outside the taxing municipality, the analysis set forth in *Gilberti* applies. On the other hand, when the reach of a business privilege tax is confined to revenues generated within the territorial limits of a municipality, the analysis in *Rendina* applies. Based upon the discussion above, where we concluded that the Ordinance is not addressed to extra-territorial business activities, we apply the analysis set forth in *Rendina* in order to evaluate whether the evidence of record supports a conclusion that the activities the Township seeks to tax occurred within the Township.

■ In *Rendina*, the Supreme Court viewed the taxpayer's business transactions occurring within Harrisburg as within the scope of Harrisburg's business privilege tax:

[I]t does not follow that gross receipts stemming from transactions occurring within a city cannot be subject to tax liability pursuant to the city's business privilege tax, simply because they are transactions. The holding of *Gilberti* was that extra-territorial transactions could be taxed as a business privilege provided that there was a sufficient nexus with an intra-city base of operations, not that they could never be taxed as a business privilege in the municipality in which they occurred unless a similar base of operations existed there. In this respect, we note that, in authorizing local taxes on such things as "transactions," "privileges," and "occupations," the General Assembly used terms that are broad, overlapping, and imprecise, and thus, its intention appears to have been to permit local governments to capture a broad range of commercial activity.

*Id.* at 418–19, 938 A.2d at 995. Thus, the Supreme Court signaled that the previous distinction between transaction-based taxes on gross receipts and privilege-based taxes on gross receipts may be less significant than previously viewed, but that regardless of whether a business privilege tax is one based on intra-territorial activities or transactions or one that reaches to extra-territorial revenues, some logical nexus must exist between the activity sought to be taxed and the taxing municipality. In *Rendina*, the Supreme Court emphasized the necessity for some logical connection between the activities that are

the subject of a business privilege tax and the municipality itself.

The Supreme Court concluded in *Rendina* that the job site was "one lengthy transaction" subject to the business privilege tax. In *J & K Trash Removal,* the ordinance provided for assessment of taxes of gross receipts arising from business occurring within the municipality, and this Court concluded that the municipality could only collect taxes on gross receipts arising from business transacted within the municipality.[9]

 The Ordinance in this case, therefore, may provide a legal basis for the imposition of the business privilege tax upon Taxpayer, but, in accordance with our discussion above, the "sales made" or "transactions" for which the Township seeks to impose its tax must be limited to those revenues that arose as a consequence of intra-territorial activities. Thus, we must review the record in order to discern whether substantial evidence supports (or could support) findings of fact that are necessary to conclude that the Board did not err in determining that *all* of the sales effected by the three salesmen who work in the tri-county area fall within the reach of the Township's Ordinance.

Taxpayer offered the testimony of John Siano, who is one of Taxpayer's salesmen. Mr. Siano testified that he and two other salesmen are assigned to the three-county region in which the Township is located. The testimony indicates that Taxpayer has not "assigned" the salesmen to the Township branch location, (R.R. at 187a–88a), and that, while the salesmen may spend more time in the Township branch *as compared to other branches,* the salesmen spend minimal time at any physical branch location, and rather spend the majority of their time on the road. (R.R. at 94a–95a.) Mr. Siano's testimony indicated that he may indeed, from time to time, use a desk and/or phone located at the Township branch, but that he is also likely to use other locations to facilitate a sale.

Mr. Siano's testimony did not provide any details regarding any particular sales for which he used the amenities at the Township branch in order to consummate a sale. Rather, he testified indefinitely that when he needs to submit sales paperwork to Taxpayer's Bensalem office, where Taxpayer approves proposed sales, he takes it to the branch that is nearest to his current location. (R.R. at 118a.) Mr. Siano testified that he does not have an office in the Township branch, but that he has a "spot that [he] can use in Whitehall." (R.R. at 130a.) The salesmen can use the "spot," which apparently includes desks, internet access, computers, and telephones. (*Id.*) Mr. Siano testified that he uses his laptop computer to determine quotes for customers, and that the software for this process is unavailable at the Township branch. (R.R. at 133a.) Mr. Siano testified that information regarding particular customers is available on his laptop. (R.R. at 138a.) Mr. Siano also testified that he uses his own cell phone to communicate with customers, unless there is a problem with his cell phone reception. (R.R. at 143a.) Moreover, Mr. Siano also testified that although sales purchase forms are sometimes available at branch locations, he has the forms in the trunk of his car. (R.R. at 145a.) Mr. Siano testified that he does not need to fill out sales purchase forms at a branch location; rather he can fill out the form anywhere. (R.R. at 153a.) Mr. Siano testified that he

9. This conclusion is consistent with the two decisions the Supreme Court relied upon in *Gilberti* in reaching its decision in that case— *City Stores Co. v. City of Philadelphia,* 376 Pa. 482, 103 A.2d 664 (1954), and *Philadelphia Appeal,* 383 Pa. 428, 119 A.2d 205 (1956).

does not use the Township branch lunchroom, because he usually eats in his car. (R.R. at 172a.) Significantly, Mr. Siano could not testify as to the number of times in a week or a month he or other salesmen go to the Township branch. (R.R. at 185a.) In other words, Mr. Siano did not testify, for example, regarding the location where he performed any or all of the tasks that were necessary to effecting, or consuming particular sales of heavy duty equipment.

Taxpayer also offered evidence regarding the manner by which it accepted sales orders. Generally, salesmen do not spend much time in branch offices. Typically, the only key transactional event that might occur is that they send purchase orders to the Bensalem office from whichever branch office they are nearest. (R.R. at 118a.) Furthermore, the Bensalem office has the final authority to approve or disapprove a proposed purchase order. (R.R. at 73a; Notes of Testimony at 70.) There is no evidence of specific orders that the salesmen sent from the Whitehall branch to the Bensalem main office. Although the Township leans heavily on other general evidence, such as the fact that Taxpayer kept heavy duty equipment available on its outside lot, which people could look at and potentially buy, there is no evidence concerning any specific sales of any of that equipment. While it is possible that some of those pieces of equipment were sold from the branch location, we note again that there is no specific evidence of such sales.

In *Rendina,* the "one long transaction" bore an obvious logical nexus to the privilege of doing business in Harrisburg, because the activity at issue resulted in the construction of a building in Harrisburg. In this case, the general testimony concerning the possibility that Taxpayer's salesmen occasionally may have used the Township branch as part of the process of consummating some sales does not clearly identify any particular sales that may constitute "sales made" or "business transactions" within the territorial limits of the Township. The Ordinance purports to tax intra-territorial transactions, but the Township seeks to tax merely the irregular presence of persons (the salesmen) in the Township, not transactions that occur in the Township. The Board did not make specific findings as to particular sales, which we view as necessary for its conclusion that the sales at issue are subject to taxation under the Ordinance. Moreover, the record does not contain any evidence that would support such necessary factual findings. Thus, the Township has not demonstrated a logical nexus between the activities it seeks to tax and the municipality.

## CONCLUSION

In summary, based on our reading of the Ordinance, we conclude that the Board erred in imposing a tax on *all* sales made by the salesmen in question. By focusing on the salesmen and not the specific sales, the Township, in essence, attempted to tax a person and not a transaction. Faced with a dearth of evidence about the specifics of each sales transaction, we must reverse the trial court.

Accordingly, we conclude that the trial court erred, and, therefore, we reverse the trial court's order.

## *ORDER*

AND NOW, this 11th day of February, 2013, the order of the Court of Common Pleas of Lehigh County is REVERSED.

DISSENTING OPINION BY President Judge PELLEGRINI.

The issue in this case is whether under the Township's Business Privilege Tax Or-

dinance sales of heavy construction equipment made by three salespeople stationed at Giles & Ransome, Inc.'s (Taxpayer) facility located within Whitehall Township (Township) are included in the calculation of the "gross volume of revenue" that is subject to the tax or if the sales or transactions actually have to take place within the Township to be subject to the tax.

The majority reverses the Tax Appeal Board and the trial court because each used the *Gilberti v. City of Pittsburgh*, 511 Pa. 100, 511 A.2d 1321 (1986), "base of operations" analysis to impose a business privilege tax on *extraterritorial* sales if attributable to an office in the taxing jurisdiction. It finds that analysis inappropriate because Section 103(c) of the Township's Ordinance is different than the ordinance in *Gilberti*[1] in that it limits the imposition of the tax to only transactions or sales that occur within the Township. I disagree with the majority's interpretation and would hold that Section 103's plain language imposes a tax on all business "activity," not just transactions that occur within the Township.

Section 103 of the Ordinance levies the tax "on the privilege of doing business." Subsection (a) imposes the tax on the "gross volume of business." "Business" is defined as "any *activity* carried on or exercised for gain or profit in the Township, including, but not limited to, the sale of merchandise or other tangible personalty, the performance of services, and the rental of property." Section 102 of the Ordinance (emphasis added). Subsection (c) then defines "gross volume of business" as:

> (c) *Whole or Gross Volume of Business.* Whole or gross **volume of business** upon which the business privilege tax imposed by this Part is computed shall include the gross consideration credited or received for or on account of **sales made,** services performed, rentals of property, and/or other business transactions within the territorial limits of the Township, subject only to the following

---

1. As the majority notes, our Supreme Court's decision in *V.L. Rendina, Inc. v. City of Harrisburg*, 595 Pa. 407, 938 A.2d 988 (2007), "signaled that the previous distinction between transaction-based taxes on gross receipts and privilege-based taxes on gross receipts may be less significant than previously viewed." *Giles & Ransome, Inc. v. Whitehall Township*, 61 A.3d 386, 393 (Pa.Cmwlth.2013). As the Supreme Court stated:

> The holding of *Gilberti* was that extra-territorial transactions could be taxed as a business privilege provided there was a sufficient nexus with an intra-city base of operations, not that they could never be taxed as a business privilege in the municipality in which they occurred unless a similar base of operations existed there. In this respect, we note that, in authorizing local taxes on such things as "transactions," "privileges," and "occupations," the General Assembly used terms that are broad, overlapping, and imprecise, and thus, its intention appears to have been to

permit local governments to capture a broad range of commercial activity.
We also observe that allowing localities some leeway in terms of the rubric under which they tax business activities occurring within their borders is consistent with the reality that virtually all businesses engage in transactions of some sort, and hence, laying a tax against the gross receipts attributable to the privilege of doing business inevitably entails taxing the gross receipts generated by some set of transactions. It additionally serves to advance the enactment's underlying policy of allowing for taxation as a *quid pro quo* for businesses advantaging themselves of local governmental benefits, including the availability of police, fire, and other services. Presently, in this respect, it is evident that [taxpayer] benefited from the availability of such services during the years it maintained a presence in Harrisburg.
*Rendina*, 595 Pa. at 418–19, 938 A.2d at 995 (citations omitted).

allowable deductions and exemptions ... (Emphasis added).

Contrary to the majority's interpretation that the tax is imposed on only "sales made" or "transactions" that occur within the Township, under Section 103, the tax is imposed on the "gross volume of business" which, because of the way the term "business" is defined, is a tax on any "activity" that is attributable to the Township that results in revenue. The rest of the sentence in Subsection (c) that begins with "shall include" means just that revenue is included in the calculation of the tax, not that it is the only item that can be taxed.

Based on that substantial evidence, the Tax Appeal Board made the following relevant findings with respect to Taxpayer's business activities within the Township:

- three of Taxpayer's salespersons maintained offices in the Township;
- Taxpayer's salespersons utilized the Township location to actively pursue the sale of heavy duty equipment, conduct business meetings and to maintain and store sales forms, equipment, brochures and files;
- heavy duty equipment was available for sale at the Township facility, with each piece maintaining a "for sale" sign;
- signs at the Township facility provided the facility's telephone number for sales, service, parts and rental;
- Taxpayer's salespersons initiated purchase orders from the Township facility for heavy duty equipment which was stored at the Township facility;
- Taxpayer's salespersons spent most of their time at the Township location as compared to Taxpayer's other locations;

2. The majority's focus on the fact that Taxpayer's Bensalem office has the final authority to approve or disapprove a proposed purchase

- Taxpayer reported sales of equipment occurring in the 18052 zip code.

Tax Appeal Board's Findings of Fact Nos. 5–11.[2]

The findings by the Tax Appeal Board here clearly demonstrate a logical connection between Taxpayer's activities and the Township, and establish more than merely "the possibility that Taxpayer's salesmen occasionally may have used the Township branch as part of the process of consummating some sales." *Giles & Ransome, Inc. v. Whitehall Township,* 61 A.3d 386, 393, 2013 WL 489997 (Pa.Cmwlth.2013).

Accordingly, because I would affirm the trial court, I respectfully dissent.

order is not determinative as to where the transaction occurred.